---

(13 Misc. Rep. 298.)

### In re LOSEE'S WILL.

(Surrogate's Court, Westchester County. June, 1895.)

WILLS—ATTESTING WITNESSES.

 Under the provision of the statute that there shall be two attesting witnesses to a will, each of whom shall sign his name at the end of the will, at the request of testator, it is not enough that two persons were present when testator signed, and that, on their being requested to sign, one of

them signed her own name, and, at the request of the other, the other's name, the other having too poor eyesight to write her own name or to see any signature on the paper.

Proceeding for the probate of the will of Harriet L. Losee, deceased.

William A. Jaycox, for petitioner.

George C. Andrews, special guardian, contestant.

SILKMAN, S. The objections of the special guardian raise the question whether the paper propounded as the last will and testament of Harriet L. Losee was signed by two attesting witnesses. The paper bears date the 6th day of December, and purports to be signed by the decedent, and attested by Eliza Brown and Elizabeth T. Lefurgy, as witnesses. There is no attestation clause. The testimony of the witness Lefurgy is to the effect that, at or about the date of the paper, it was signed by the decedent, in the presence of Mrs. Brown and witness, and declared by the decedent to be her last will, and that thereupon decedent requested Mrs. Brown and witness to sign as witnesses; Mrs. Brown's eyesight being such that she could not see to write, witness signed Mrs. Brown's name, as well as her own, signing Mrs. Brown's name at her request. No one else was in the room at the time. Decedent was in bed, and Mrs. Brown and witness stood by the bedside while the paper was signed upon a book, Mrs. Brown supporting decedent while she wrote. Mrs. Brown gives similar testimony, except that she testifies that her eyesight was so poor that she could not see whether there was ink on the pen with which decedent wrote, and that her eyesight has been about the same for 15 years. Upon the witness stand, she was unable to distinguish the writing upon the paper propounded, and, in endeavoring to point out the signature, held the paper upside down without being aware of it, and actually pointed to the body of the instrument as the place where the names of the decedent and alleged witnesses were. Her efforts were such as to make it clear that she could only discern that the paper in her hand was not merely a piece of blank paper. She wholly failed to identify it as the one upon which she requested Mrs. Lefurgy to write her name. The Revised Statutes, among other requisites for the proper execution of a will, provide: "There shall be at least two attesting witnesses, each of whom shall sign his name at the end of the will at the request of the testator." One of the main objects of the statute is for the purpose of having the paper intended to be the last will and testament signed by two persons as witnesses, who can subsequently identify it as the one which they saw the testator sign, or upon which they saw testator's signature. A witness is one who has knowledge of a fact or occurrence sufficient to testify in respect to it. In the case of a will, a witness must have knowledge that the paper is a will by the declaration of the testator that it has been signed, by either seeing the signature written or by seeing the signature with an accompanying acknowledgment by the testator that it is his or her signature. Lewis v. Lewis, 11 N. Y. 220; Mitchell v. Mitchell, 16 Hun, 97; In re Mackay, 110 N. Y. 611, 18 N. E. 433; Sis-

ters of Charity v. Kelly, 67 N. Y. 409; Willis v. Mott, 36 N. Y. 486; In re Van Geison, 47 Hun, 8; In re Bernsee, 141 N. Y. 389, 36 N. E. 314. In the Mackay Case, Earl, J., in writing the opinion, says:

"Subscribing witnesses to a will are required by law for the purpose of attesting and identifying the signature of the testator, and that they cannot do unless, at the time of the attestation, they see it."

And, in the Case of Bernsee, Andrews, C. J., cites the Mackay Case, and says:

"It is essential to the due publication of a will, either that the witnesses should see the testator sign the will, or that such signature should have been affixed at some prior time and be open to their inspection."

The loss of the sense of sight does not disqualify a person as a witness in many transactions, where they obtain knowledge of the transaction through the other senses than that of sight. By the sense of hearing, a witness can testify to the sound of the voice; by the sense of feeling, to the question of shape; through the sense of smell, to the matter of odors. But without the sense of sight a person is incompetent and cannot be an attesting witness to a will. There must be an identification of the instrument by one who has seen the signature written, or has seen the signature which has been acknowledged by the testator as his or hers. The paper propounded is identified only by the witness Lefurgy. She is the only one who saw the signature of the decedent at the time of the execution, and can swear that it is the paper which the decedent signed, and which she signed as a witness. It is true that the statute permits the proof of the handwriting of the decedent and of the subscribing witness or witnesses, where the subscribing witness or witnesses are dead, or absent from the state, and their testimony cannot be obtained; but the statute applies only where there have been two attesting witnesses who have signed their names as such. The statute was passed to allow the probate of wills that had been executed with all the formalities required by law. The difficulty in this case is that there was but one witness, and the formalities prescribed by the statute were not fulfilled. Mrs. Brown was not a witness, because she could not see at the time of the alleged execution. If she had been able to see then, and subsequently lost her sight, the case might be different. Such was the case of Cheeney v. Arnold, 18 Barb. 434, relied upon by the proponent. In that case, a subscribing witness who had signed the will had become blind by reason of great age. The case was decided upon the well-established legal principle that, where the witnesses are dead, or by lapse of time do not remember the circumstances attending the execution, the law, after diligent production of all the evidence existing, if there are no circumstances of suspicion, will presume a proper execution of the will, particularly when the attestation clause is full. The statute prescribing the necessary formalities for the due execution of a will was passed to provide against fraud and imposition, and the protection given by it cannot be repealed by the court. Its wisdom needs no argument to sustain it, even though in isolated cases injustice is done and the wishes of the dead are thwarted.

A decree will be entered, denying probate. Decreed accordingly.